73 So.2d 424

McGEE et al.

v.

POLICE JURY OF CADDO PARISH et al.

In re POLICE JURY OF CADDO PARISH et al.

No. 41376.

March 22, 1954.

Rehearing Denied May 31, 1954.

Edwin L. Blewer, Dist. Atty., John A. Richardson, Asst. Dist. Atty., Shreveport, for defendants-relators.

Booth, Lockard & Jack, Shreveport, Horace M. Bickham, Jr., Vivian, Clem H. Sehrt, New Orleans, for plaintiffs-respondents.

HAWTHORNE, Justice.

A writ was granted in this case so that we might review a judgment of the Court of Appeal, Second Circuit, 66 So.2d 408, decreeing a local option election held in

the unincorporated portion of Ward 4 of Caddo Parish illegal, null, and void.

In Ward 4 of Caddo Parish there is one incorporated municipality, the City of Shreveport. The remainder, the unincorporated portion, of the ward contains four precincts. Petitions purportedly complying with the provisions of R.S. 26:581 to 595 were circulated in the unincorporated portion of Ward 4, that is, in Precincts 1, 2, 3, and 4, addressed to the Police Jury of Caddo Parish, requesting that body to call a local option election in the unincorporated portion of Ward 4. These petitions were filed with a Caddo Parish registrar of voters, and she certified that the petitions so circulated contained the names of 25 per cent of the registered voters of the unincorporated portion of Ward 4. Pursuant to the request made in these petitions the Police Jury of Caddo Parish called a local option election for the unincorporated portion of the ward only, which was held on August 5, 1952. At this election the majority of the voters voted against permitting the sale of alcoholic beverages as defined in the statute, or, in other words, the vote was "dry".

Respondents, qualified to vote in the election, timely instituted this suit (R.S. 26:590) to have the election and the ordinance adopted pursuant to it declared illegal and ineffective on the ground, among others, that the election was not called and conducted pursuant to the requirements of the Revised Statutes, in that the Police Jury of Caddo Parish had no authority under the local option statute to call the election for the unincorporated portion of the ward only.

The Court of Appeal pointed out in its opinion that parishes and municipal corporations are creatures of the State and are vested only with such powers as may be conferred upon or delegated to them by the Legislature or the Constitution of this state. Moreover, the prohibition of the sale of alcoholic beverages by municipalities or police juries is a police power delegated to such bodies by the Legislature after a local option election, legally held, in which the majority of the electors have voted against the sale of such beverages; and, being a police power, it is properly exercised only if the police jury acts pursuant to the authority conferred by statute. City of Minden v. David Bros. Drug Co., 195 La. 791, 197 So. 505; State v. Jordan, 207 La. 78, 20 So.2d 543.

The source of the revised statute under which the police jury purported to act in this case is Act 372 of 1948. According to the title of this act, it is an act "To provide for separate referendum elections in wards and incorporated villages, towns and cities upon the petition of not less than twenty-five (25%) per cent of the duly qualified electors of said subdivisions * * *". Thus its title indicates that it provides for local option elections only on a ward-wide or municipal-wide basis, and this title makes

no mention of an election in the unincorporated portion of a ward.

R.S. 26:582 reads as follows:

"Upon petition of not less than twenty-five per cent of the qualified electors residing in any ward, or any incorporated municipality the governing authority shall order a referendum election to be held to determine whether or not the business of manufacturing, producing, rectifying, distilling, blending, using, storing, distributing and selling alcoholic beverages, shall be conducted and licensed therein.

"This election shall be separately called and held, and the result separately binding for each incorporated municipality, and for the unincorporated balance of the ward. No such election shall be held on a parish wide basis or for any subdivision other than the ones above mentioned.

"No such election shall be held for the same subdivision oftener than once in every two years."

In the first paragraph of this section again we find that a referendum election can be called by the governing authority of a ward or an incorporated municipality only upon the petition of not less than 25 per cent of the electors residing in such ward or municipality.

Section 583 deals with the form of the petition and provides that any qualified elector desiring a referendum election shall sign a petition addressed to the governing authority of the subdivision in which he resides. The form of the petition, as set forth in this section, shows that it is a request for a referendum election to be held in a ward or in an incorporated municipality.

Section 585 deals with the verification of the petition, and in Paragraph 4 of this section it is provided that the verification of the registrar of voters shall show the number of qualified electors of the ward or of the municipality, as the case may be. No mention is made of the certification of a petition for an unincorporated portion of a ward.

Section 587 sets out the form of the ballot for submission of three propositions, and in the concluding paragraph it is provided: "A majority vote cast on each proposition shall separately determine that issue *for the ward,* or for the incorporated municipality. When a ward contains an incorporated municipality, the issue shall be separately determined for the municipality and for the unincorporated balance of the ward." (Italics ours.) Again, there is no indication that an election may be called and held only in the unincorporated portion of a ward, but on the contrary this paragraph contemplates only ward-wide and municipal elections, with a special provision for determining the issue in a ward-wide election where a ward contains a municipality.

The language of Section 592 also indicates that ward and municipal elections are the only ones contemplated by the statute, for that section provides that such elections.

shall be supervised by the board of supervisors of election for the parish in which the ward or incorporated municipality calling the election is located.

In considering the statute as a whole, we do not find any express and specific delegation of authority by the Legislature to police juries to call a local option election in an unincorporated portion of a ward, but on the contrary we think that the only power delegated to police juries is to hold such election on a ward-wide basis; and in the absence of such delegation of authority they are without power or authority to call, conduct, and hold such election upon petition of electors for an election in the unincorporated portion of a ward.

Relators in support of their contention that the judgment of the Court of Appeal is erroneous rely on certain language or expressions found in Sections 582, 584, and 587 of the local option statute, R.S. 26. Section 582, as we have heretofore pointed out, provides that the governing authority of any ward or incorporated municipality shall order a referendum election to be held upon the petition of not less than 25 per cent of the qualified electors residing in the ward or municipality. Relators argue that the second paragraph of this section confers the power and right on the police jury to call an election in the unincorporated portion of a ward when the ward contains a municipality, and they rely on the following language found therein: "This election shall be separately called and held,

and the result separately binding for each incorporated municipality, and for the unincorporated balance of the ward." The words "This election" as found in this paragraph would seem to apply to any referendum election, whether it were called on a ward-wide basis or in an incorporated municipality, but a reading of the entire paragraph discloses that these words could apply only to a ward election in a ward where there is one or more incorporated municipalities. They could not apply to an election called by a municipality because the unincorporated balance of the ward would not be affected, nor could they apply to a ward election where there is no incorporated municipality in the ward. This paragraph must be read with the preceding paragraph of Section 582, under which the governing authority of a municipality or of a ward has no power, right, or authority to call a referendum election except upon the petition of not less than 25 per cent of the qualified electors therein. No provision is made in the second paragraph relied upon by relators for a petition from the unincorporated portion of a ward which contains an incorporated municipality, and in the absence of a provision in the statute for such a petition the police jury is without authority to call such an election.

Relators contend that this paragraph permits the calling and holding of such an election, but no provision is made in the statute for the procedure for initiating such election. The statute provides that an election

can be called only in a ward or in a municipality upon a petition of 25 per cent of the qualified electors residing therein. Therefore, under the very plain terms of the statute, to have such an election as contended for by relators herein, it would be necessary to secure the signatures of 25 per cent of the electors residing in the entire ward which contained an incorporated municipality although the police jury would call the election only for the unincorporated portion of the ward.

The purpose of Paragraph 2 of Section 582 is made clearer by an examination of Section 587 of the statute which deals with the election itself. The last paragraph of this section provides that a majority vote cast for each proposition shall separately determine the issue for the ward or for the incorporated municipality, and that, when a ward contains an incorporated municipality, the issue shall be separately determined for the municipality and for the unincorporated balance of the ward. When these two provisions are considered together, they clearly indicate that the statute contemplates that, when an election is called on a ward-wide basis and the ward contains an incorporated municipality, the issue presented shall be separately determined by the electorate for the municipality and for the unincorporated balance of the ward. It certainly does not contemplate that two elections shall be held, one for the unincorporated portion of the ward and one for the municipality or incorporated portion of the ward, because this section plainly provides that the issue in a ward-wide election shall separately be determined for the municipality and for the unincorporated balance of the ward. In such a ward-wide election called by the police jury the sale of intoxicating beverages could be prohibited in the municipality if the majority of the voters so voted, and the unincorporated portion of the ward could by a majority vote permit such sale, or "vote wet", or vice versa. The purpose of this provision relied upon by relators was simply to enable the issue in a ward-wide election to be separately determined for the incorporated and the unincorporated portions of such ward.

Relators contend that a holding by this court that an election could not be called and held for the unincorporated balance of a ward containing an incorporated municipality would create a hiatus in the law. They say, for example, that, if an election was held in an incorporated municipality in such ward, such election would disenfranchise the electors of the unincorporated portion of the ward for at least two years, as the statute provides that no such referendum election shall be held in the same subdivision oftener than once in every two years. There is no merit to this contention, for under the provisions of the statute the governing authority of a municipality could call a local option election, and the majority of the voters therein could "vote wet"; notwithstanding the municipal election, the police jury for the ward in which the munici-

pality is situated could at any time thereafter call a ward-wide election, and in this election the majority of the electors of the municipality could "vote dry", and the unincorporated balance of the ward could "vote wet", and the result would be separately binding on each. The holding of these two elections, one called by the governing authority of the municipality and the other called by the governing authority of the ward, would not violate the provision of the statute that no such election shall be held for the *same* subdivision oftener than once in every two years, as the municipality and the ward are separate subdivisions.

Section 584 deals with the filing of the petitions for a referendum election and their publication by the registrar of voters in the official journal of the parish or the municipality, as the case may be. Although this section speaks of "multiple petitions for each ward or portion thereof", the words "portion thereof" do not convey the meaning that the election may be held in an unincorporated portion of the ward only. They mean that multiple petitions in a ward-wide election may come from any portion of the ward and were inserted in the statute to facilitate the circulating of the petition and to make it more convenient to obtain the required percentage of signatures. The portion of this section dealing with expenses means that, if the election is ward-wide, the police jury bears the expense of publication in the official journal of the parish, and, if it is called by the governing author-

ity of a municipality, the municipality bears the expense of publication in its official journal.

The relators further argue that, even though we conclude that there has not been a compliance with the statute by the police jury in calling and holding the election for the unincorporated portion of Ward 4, the election should not be invalidated because at approximately the same time the governing authority of the municipality in this ward, the City of Shreveport, called and held a local option election there. It is their contention that as a result of these two elections, one called by the police jury and the other by the governing authority of the municipality, the identical issues were submitted to, and were voted upon by, the qualified electors in the entire ward, and that consequently there has been no substantial noncompliance with the statute. This argument cannot prevail. The electors of the City of Shreveport in voting at the municipal election called by the governing authority of the city voted on the issues presented for the municipality only and not on a ward-wide basis, and these electors petitioned for a municipal election and not for a ward-wide election. Under these circumstances the two elections could never be considered the same as a ward election.

For the reasons assigned, the judgment of the Court of Appeal, Second Circuit, is affirmed. Relators are to pay all costs insofar as allowed by law.

HAMITER, Justice (dissenting).

For a number of years the sale of intoxicating liquors was authorized throughout Ward 4, of Caddo Parish, of which the incorporated municipality of Shreveport is a part. Simultaneously, between September 9, 1951 and November 6, 1951, petitions, seeking the calling of two local option elections, were separately circulated, (1) in the City of Shreveport, being addressed to the city council, and (2) in the entire unincorporated balance of Ward 4, being directed to the Caddo Parish Police Jury.

On the last mentioned date, and simultaneously, two separate sets of petitions relating to the mentioned respective portions of Ward 4 were filed with Miss Jim Martin, the Registrar of Voters of Caddo Parish, for checking and verification as required by law. In due course such work was completed; and delivery of the petitions occurred as follows: the Shreveport set to the municipal authorities on April 14, 1952, and the unincorporated area set to the Police Jury on May 7, 1952.

Pursuant to the petitions the municipal authorities held an election within the City of Shreveport on July 15, 1952. Twenty-one days later, or on August 5, 1952, an election in and for the entire unincorporated area was conducted by the Police Jury.

In the latter election a majority of the votes cast was against permitting the sale of intoxicating liquors; consequently, the Police Jury proceeded to enact the required

ordinance to prohibit the sales. After the first reading and before final passage of the ordinance, however, this suit to annul the election was instituted.

The district court rejected the demands of plaintiffs, on the merits, and dismissed the suit. The Court of Appeal, Second Circuit, reversed that judgment and decreed the election null and void. The cause is before this court on a writ of certiorari or review.

The basic question presented is whether or not the Legislature intended by the present local option statute, Act No. 372 of 1948, as carried into LSA–R.S., Title 26, Sections 581 to 595, inclusive, to authorize or permit the petitioning for and the calling and holding of an election restricted to the unincorporated portion of a ward. And that question, in my opinion, requires an affirmative answer when consideration is given to the history of the development of the legislation and to the statute as a whole, particularly to the pertinent provisions of the original Act No. 372 of 1948 which I quote as follows:

"Section 1. * * * that on the petition of not less than twenty-five (25%) per cent of the qualified electors residing in any ward, incorporated village, town or city of the state the governing authority there or [thereof] shall order a referendum election * * *; provided that such election shall be separately called and held, and the result separately binding for each incorporated village, town or city, and for the unincorporated balance of the ward; and pro-

vided also that no such election shall be held on a parish wide basis or for any subdivision other than hereinabove defined, and no such election shall be held for the same subdivision oftener than once in every two years.

\*     \*     \*     \*     \*     \*

"Section 3.   \*   \*   \*

"A majority vote cast on each proposition shall separately determine that issue for the ward, or for the incorporated village, town or city, and when a ward contains an incorporated village, town or city, the issue shall be separately determined for said incorporated village, town or city and for the unincorporated balance of the ward.

\*     \*     \*     \*     \*     \*

"Section 6. Each qualified elector desiring a referendum election, shall sign a petition addressed to the governing authority of the subdivision in which he resides, and in substantially the following form:

Petition

To:

"The undersigned qualified electors respectfully request that you call an election to submit, in the manner provided by law, to the qualified electors of Ward ——— of ——— Parish, or of the city, town or village of ———, the following three propositions:   \*   \*   \*

"Section 7. The multiple petitions for each ward, portion thereof or for each incorporated village, town or city must be bound together as one petition and shall be filed at one time with the Registrar of Voters \* \* \*. The Registrar of Voters shall have the petition \* \* \* published at the earliest possible time in the official journal of the parish or municipality, as the case may be, at the expense of the governing authority of the city, town or village, or unincorporated balance of a ward, as the case may be, charged with the duty of calling the election. \* \* \*

"Section 8. The Registrar of Voters shall check the petition and attach thereto his sworn verification showing: \* \* \* (4) The number of qualified electors of the ward or city, town or village, as the case may be, on the registration rolls as of the date of the filing of the petition \* \* \*. He shall file the petition, with his sworn verification, with the governing authority charged with the duty of calling the election. \* \* \*"

Prior to the adoption of Act No. 372 of 1948 the local option law of this state was embodied in Act 17 of the First Extraordinary Session of 1935. It provided for the holding of an election throughout a parish or ward. Any municipality lying therein was included; but it was allowed to determine at the parish-wide or ward-wide election, through a separate tabulation, the question of the sale of low content alcoholic beverages within its boundaries. The electors of a parish or ward, in other words, were permitted to regulate the sale of beverages of high alcoholic content in that en-

tire subdivision, including any municipality contained therein.

But in the present statute respecting local option elections, the Legislature, using certain phraseology that did not appear in the former legislation, has manifested an intention to prohibit parish wide elections and to completely separate municipalities from wards. In the above-quoted provisions, as I understand and appreciate them, the lawmakers have ordained that where a ward contains no incorporated municipality the governing authority (the Police Jury), when properly petitioned, shall call and hold at its expense a ward-wide election. However, where the ward contains an incorporated municipality the legislative requirement, as I view it, is that the municipality and the balance of the ward shall have separate elections, each being conducted by the respective governing authority; and "that such election shall be separately called and held, and the result separately binding for each incorporated village, town or city, and for the unincorporated balance of the ward".

Meanwhile, the multiple petitions "for each ward" (a ward containing no incorporated municipality), "portion thereof" (the unincorporated balance of a ward if a municipality is situated therein) or "for each incorporated village, town or city" must be bound together as one petition and filed with the Registrar of Voters. And when the work of checking and verification is completed the Registrar is obligated to publish the petition "at the expense of the governing authority of the city, town or village, or unincorporated balance of a ward, as the case may be, charged with the duty of calling the election."

The view of the majority herein concedes that under the present statute 25% of the electors residing in an incorporated municipality of a ward may petition for and obtain a municipal wide election. in which the electors in the unincorporated balance of such ward can not participate. But it concludes that the latter citizens are not permitted to vote at an election involving their specific area, unless and until 25% of the electors of the entire ward seek and are granted a ward-wide election in which all of the electors of the ward, including those of the municipality, will be allowed to vote.

In my opinion such result would be clearly discriminatory and unjust to the electors of the ward residing without the municipality, and I can not possibly believe that the Legislature intended it. Moreover, it could amount to their partial disfranchisement. Becoming interested in local option to the extent that it concerns only the city in which they live, and knowing that they are adequately protected under the statute, the electors of that municipality might well refuse to join in petitions for a ward-wide election; in which event signatures of 25% of the entire ward electors, required for the election, could never be obtained.

For these reasons I respectfully dissent.