340 So.2d 1045 (1976)
Thomas M. STEWART et al.
v.
LIVINGSTON PARISH POLICE JURY et al. (two cases).
Nos. 10595 and 10596.
Court of Appeal of Louisiana, First Circuit.
December 20, 1976.
*1047 Karl W. Cavanaugh, Denham Springs, for plaintiffs.
Calvin C. Fayard, Jr., Denham Springs, for defendant-jury.
Charles W. Borde, Jr., Denham Springs, Bert K. Robinson, Baton Rouge, for defendant-city.
Before LANDRY, COLE and CLAIBORNE, JJ.
LANDRY, Judge.
Plaintiffs (Appellants) in these consolidated cases, appeal judgments rejecting their suits to enjoin promulgation of the returns of a local option election and to declare null and void the election held in Ward 2, Livingston Parish, pertaining to the sale of alcoholic beverages in excess of 3.2% alcoholic content. Appellants also seek to enjoin enforcement of ordinances adopted by the Livingston Parish Police Jury and the City of Denham Springs predicated upon the outcome of the election. We affirm in part and reverse in part.
The following pertinent facts are undisputed: On March 22, 1975, the Police Jury called a special election of the qualified voters of Ward 2, Livingston Parish, including the City of Denham Springs (Denham Springs) and the Town of Port Vincent (Port Vincent), pursuant to petition of more than 25% of the registered voters in the ward. The special election was called for May 3, 1975, on which date a general bond election was to be held in Livingston Parish. Police Jury intended to effect a saving by calling both elections on the same date. The special election presented to the voters of Ward 2, the following propositions: (1) Whether to permit sale of beverages of low alcoholic content (beverages containing more than 3.2% alcohol by weight but not more than 6% by volume); (2) Whether to permit sale of beverages of high alcoholic content (more than 6% alcohol by volume), for on the premises consumption; and, (3) Whether to permit package sale only of beverages of high alcoholic content, meaning sale for off premises consumption only. Notice of adoption of the election ordinance was published in the Denham Springs News, the official Journal of the Police Jury, four times between March 22 and May 1, 1975. Shortly before the election date, the Police Jury became aware that the May 3, 1975, election date did not comply with the provisions of LSA-R.S. 26:586, et seq. (Local Option Law), which requires that an election be held not less than 45 nor more than 60 days from the date of the resolution calling same. On May 1, 1975, Police Jury adopted a resolution amending its resolution of March 22, 1975, to cancel the May 3, 1975, election date and rescheduling the election for May 13, 1975. The Police Jury considered but rejected May 17, 1975, as the new election date, when it *1048 became aware that yet another election was scheduled for the latter date. When the error was discovered, however, it was learned the special election ballots could not be removed from the voting machines prepared for the May 3,1975, election and that the machines could not be adjusted to prevent voting on the local option ballots appearing thereon. It is conceded that on or about April 28,1975, all local news media in Livingston Parish, including radio and television, carried the announcement that the May 3, 1975, local option election had been postponed. It is stipulated that the Police Jury did all it could to prevent the local option ballots from appearing on the voting machines. On April 29, 1975, the Police Jury supplied each election commissioner and each precinct clerk with a notice of postponement of the local option election and directed each commissioner and clerk to ignore any local option ballots cast. A copy of the notice was placed in each voting machine and similar notices were posted at each precinct on May 3, 1975. The notice called attention to the postponement, requested voters to refrain from voting on local option issues and advised that any votes cast on the local option issues would not be counted.
On May 2, 1975, certified copies of the May 1 resolution were manually delivered to the Secretary of State; the Custodian of Voting Machines; the Clerk of Court, Livingston Parish; the Ex-Officio Custodian of Voting Machines, Livingston Parish; the Registrar of Voters, Livingston Parish; and each Board of Election Supervisor, Livingston Parish. Despite the foregoing, some votes were cast on May 3, 1975, on the local option issues, the number of said votes not being shown. These votes were neither counted nor tabulated.
After May 1, 1975, notice of the new election date was published three times in the Denham Springs News, the only issues of the paper published between May 1, and May 13, 1975. A day or two prior to May 13, 1975, the Police Jury purchased numerous spot radio announcements informing the electorate of the new election date. In the ward wide election, Proposition One failed by a vote of 1,874 to 1,580; Proposition Two lost by a vote of 2,000 to 1,442; and Proposition Three failed by a vote of 1,884 to 1,548. In Denham Springs, Proposition One failed by a vote of 910 to 882; Proposition Two lost by a vote of 984 to 796; and Proposition Three lost by a vote of 907 to 866. In Port Vincent, Proposition One carried by a vote of 92 to 20; Proposition Two carried by a vote of 94 to 21; and Proposition Three received a favorable vote of 82 to 32. On May 22, 1975, the Police Jury adopted an ordinance prohibiting the sale of alcoholic beverages containing more than 3.2% alcohol by weight, in all of Ward 2, Livingston Parish, except within the Town of Port Vincent. On May 27, 1975, the City of Denham Springs adopted Ordinance Number 588 prohibiting the sale of alcoholic beverages containing more than 3.2% alcohol by weight, within the city limits. The trial court's reasons for judgment impliedly upheld the validity of the Denham Springs ordinance.
It is conceded the Police Jury acted in good faith in conducting the election in the manner indicated. Nevertheless, Appellants contend the election ordinances predicated on the results, are null and void for the following reasons: (1) The change in election date does not comply substantially with LSA-R.S. 26:586, which requires calling an election within not less than 45 nor more than 60 days prior to adoption of the election ordinances; (2) The rescheduled election date did not allow time for absentee balloting as required by LSA-R.S. 18:1071, et seq.; (3) Failure of the Police Jury to furnish commissioners of Precinct 7-2 separate lists of voters in or outside Port Vincent as required by the resolution calling the election; (4) The City of Denham Springs did not call a local option election; (5) The Police Jury is without authority within incorporated municipal limits; and (6) Alternatively, the election is an unconstitutional exercise of initiative and referendum in contravention of La. Const.1974, Article 3, Section 1.

*1049 THE ALLEGED NULLITY OF THE ELECTION AS AN UNCONSTITTIONAL EXERCISE OF INITIATIVE AND REFERENDUM CONTRARY TO LA.CONST.1974, Article 3, Section 1.
We determine this issue first, considering its resolution in favor of Appellants would eliminate the necessity of deciding all other questions presented. Appellants concede that under La.Const.1921, local option elections were not deemed an unconstitutional delegation of legislative power. Appellants urge, however, that La. Const.1974, Article 3, Section 1, vests all legislative power in the State Legislature and no provision of the present constitution expressly permits initiative or referendum. Therefore, Appellants suggest, initiative and referendum are no longer permissible and consequently, LSA-R.S. 26:581, et seq. is unconstitutional.
La.Const.1921, Article 3, Section 1, provides:
"The legislative power of the State shall be vested in a Legislature, which shall consist of a Senate and a House of Representatives."
La.Const.1974, Article 3, Section 1(A) states:
"The legislative power of the state is vested in a legislature, consisting of a Senate and a House of Representatives. The Senate shall be composed of one senator elected from each senatorial district. The House of Representatives shall be composed of one representative elected from each representative district."
The grant of legislative power is identical under both cited constitutional provisions. In State v. Watkins, 176 La. 837, 147 So. 8 (1933), the Court considered the validity of a state wide referendum called to repeal the prohibition law known as the Hood Act. The Court held that a statewide referendum was void as an unlawful delegation of legislative power. However, the court noted the following:
"That principle does not forbid the Legislature to enact local laws dependent for their effect upon a vote of the electors of the locality to be affected, or to enact a general law or municipal charter to govern only such municipalities as may see fit to adopt it by a majority vote of the electors in the municipality."
Our jurisprudence as above pronounced in Watkins, accords with the majority of jurisdictions regarding laws effective upon contingencies. In this respect we note the following appearing in 16 Am.Jur.2d, Constitutional Law, Section 258, page 507:
"The rule is well settled that while the legislature may not delegate its power to make a law, it may make a law to become operative on the happening of a certain contingency or future event. The legislature may enact a general law, complete in its terms, to become operative only upon the happening of a subsequent event, and this event may be the subject of control by human agencies. Moreover, in general it makes no essential difference what is the nature of the contingency if it is essentially just and legal. The reason for this rule is that it is not always essential that a legislative act must in any event take effect as law after it leaves the hands of the legislature. If the law is in its provisions a complete statute in other respects, its taking effect may be made conditional upon some subsequent event. When that event happens, the statute takes effect and becomes the law by force of legislative action as fully as if the time when it should take effect had been unconditionally fixed.
Following the same general rule, a law may also be made to take effect conditionally, depending upon the action of a municipal council, or even the action of the legislature of another state.
A statute is not invalid merely because it provides for the consent of interested persons to the contemplated regulation. Hence, a valid contingency upon which a law may take effect may be the vote of the electors of a given territory or part of the state within which the law is to operate. But the legislature cannot constitutionally provide that the qualified voters in one governmental unit shall decide *1050 whether a statute shall be in force and effect elsewhere than in the territory comprising that governmental unit."
We likewise note the pronouncement of our own Supreme Court in Hainkel v. Henry, 313 So.2d 577 (La.1975), as follows:
"A general principle of judicial interpretation of a state constitution is that, unlike the federal constitution, a state charter's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature. Thus, in the absence of a particular constitutional provision that limits the power of the legislature to act in the respects assailed, a legislative action cannot be [assailed] as contrary to the state's constitution."
See also 16 C.J.S. Constitutional Law, Section 142, p. 680; W. Lee Hargrave, Louisiana Constitutional Law, 36 La.L.Rev. 533.
We find nothing in our Constitution of 1974, which restricts or prohibits the power of the legislature to enact a local option law. We conclude, therefore, that LSA-R.S. 26:586, et seq., is not violative of La. Const.1974, Article 3, Section 1.

THE VALIDITY OF THE MAY 1, 1975 AMENDMENT TO THE POLICE JURY RESOLUTION OF MARCH 22, 1975.
It is well settled that in the absence of fraud or gross irregularities, courts will not set aside the results of an election. Felder v. Police Jury of Livingston Parish, 207 La. 550, 21 So.2d 724 (1945); Duncan v. Vernon Parish School Board, 226 La. 379, 76 So.2d 403 (1954); Dupre v. City of Houma, 216 So.2d 576 (La.App.1st Cir. 1968).
Even where proven irregularities exceed the difference in the votes between candidates, an election will not be set aside unless the defeated candidate establishes that but for the irregularities he would have been elected. Moreau v. Tonry, La.Sup.Ct., 339 So.2d 14, October 21, 1976.
It is stipulated that the Police Jury resolution of March 22, 1975, was adopted in good faith and with the view of economizing on election costs by holding the local option election conjointly with a previously scheduled parish wide bond election. It is also conceded the Police Jury was unaware that May 3,1975, fell four days short of the statutory 45 day minimum. Appellants urge, however, that the minimum period is intended to allow time for preparation of ballots and voting machines, to close voter registration books, to acquaint the public with the election date, and to allow the performance of other routine matters which must precede an election. In this case, the record shows reasonable notice of the change was given and that, while some confusion resulted, a total of 3,454 electors voted in the election held. It is also shown that ample voting machines were available and the ballots appearing thereon properly submitted and adequately explained the nature of the issues submitted to the electorate.
LSA-R.S. 26:589, provides that such elections shall be conducted as nearly as possible in accordance with the state's election laws. It further provides that, where not otherwise regulated by LSA-R.S. Title 26, Chapter 3, or by any other statute, the authority calling a local option election shall provide in the call for the manner in which the election shall be conducted and the results promulgated.
It is provided, inter alia, by LSA-R.S. 18:545, that each parish board of election supervisors shall give 15 days notice of an election by advertisement in the official parish journal, or by posting at four public places in the parish if there is no official parish journal, but that no default by the parish board of supervisors in issuing the proclamation shall deprive the people of the right to hold an election as fixed by law or vitiate an election held. In Ginn v. Village of Bonita, 62 So.2d 159 (La.App.2nd Cir. 1952), which involved a local option election contest, it was held that publication of the election notice by posting in public places instead of publication in the official journal, did not vitiate the election. In so holding, Ginn, above, noted the provisions of LSA-R.S. 18:545.
*1051 We find also that the May 1,1975, amendment of the March 22, 1975, Police Jury resolution fulfills the time requirement of LSA-R.S. 26:586. The amendment of a statute or ordinance substitutes the amending provision in lieu of the language it replaces, in its relation to the other sections of the same subject. This rule was established in Police Jury of Caddo Parish v. Mayor and City Council of Shreveport, 137 La. 1032, 69 So. 828 (1915), which states:
"An amendment of a statute by the subsequent act operates precisely as if the subject-matter of the amendment had been incorporated in the prior act at the time of its adoption, so far as it regards any action after the amendment is made, for it must be remembered that an amendment becomes a part of the original act, whether it be a change of a word, figure, line, or entire section, or a recasting of the whole language." (Emphasis added).
Assuming an irregularity exists as regards the time element under consideration, we note first that good faith is conceded in this instance. Secondly we point out that Appellants have failed to establish that but for the irregularity, either the result would have been different or the electorate was deprived of the opportunity to freely express their will. Moreau v. Tonry, above.

WAS THE TIME PERIOD ALLOWED FOR ABSENTEE VOTING SUFFICIENT TO VITIATE THE ELECTION.
Local option elections must be conducted as nearly as possible in accord with the election laws of the state. LSA-R.S. 26:590. The law contemplates that all persons are to be allowed an opportunity to vote. Hollan v. Police Jury of Webster Parish, 134 So.2d 132 (La.App.2nd Cir. 1961). In effect LSA-R.S. 18:1072 provides that absentee voting may be had by mail beginning sixty days and ending seven days before an election and, in person, absentee voting may be made not more than nineteen nor less than six days prior to an election.
In this case, absentee voting was permitted in the May 3, 1975, election during two five day week periods in which eight absentee ballots were cast, none of which were counted. Absentee balloting was discontinued 7 days prior to this election. For the May 13, 1975 election, two days, May 5 and May 6, were allowed for absentee voting and the absentee voting books were closed on the latter night. Nineteen absentee votes were cast in the May 13, 1975, election. In effect, Appellants produced four witnesses who testified that they did not vote on May 13, 1975, because they were unaware the election had been postponed. In essence each testified that they did not know about the election because they had not read the local newspaper. These witnesses did not testify as to how they would have voted had they participated in the election. We find, however, that the fact that nineteen persons voted absentee ballots in the two day period allowed for absentee voting, attests the extent of publication and notice given in this instance. Assuming an irregularity exists with regard to absentee voting, Appellants have failed to show that but for such irregularity, the outcome of the election would have been different. Moreau v. Tonry, above.

FAILURE TO FURNISH SEPARATE COMMISSIONER LIST FOR THE TOWN OF PORT VINCENT.
The Police Jury resolution calling subject election recites that in precincts having residents living in both municipal and unincorporated areas of the ward, separate voting lists were to be furnished the commissioners designating the names of electors in each such areas. It is conceded that the Voter Registration List furnished for Precinct 7-2 did not designate which electors resided in Port Vincent and which of the electors resided outside the limits of that municipality. At trial it was stipulated that it was physically impossible to designate which electors resided within and which resided without Port Vincent.
*1052 Eight commissioners were appointed to conduct the election in Precinct 7-2 four were selected from within Port Vincent and four from outside the municipal limits. Two voting machines were used for the election; one was designated for use by voters living in and the other for use by voters living outside Port Vincent. Each elector voting at this precinct was asked, and the commissioners, to the best of their knowledge, verified whether each voter lived inside or outside of Port Vincent. Each elector was required to sign the single registration book provided for the precinct. A separate list was kept, however, showing those voters who lived outside the municipality. After determining whether a voter lived in or out of Port Vincent, the Commissioners directed him to cast his ballot on the appropriate machine. After closing of the polls, the votes were tabulated separately on each machine and were separately counted and recorded. Appellants concede the Commissioners acted in good faith and to the best of their ability in separating the votes of the electors residing within and without the municipality. Nevertheless, Appellants contend that it is not certain that no elector residing outside Port Vincent voted on the machine designating the vote in Port Vincent.
LSA-R.S. 26:582 provides that elections of this nature shall be separately called and the result shall be separately binding upon each incorporated municipality and the rest of the ward involved.
LSA-R.S. 26:587 recites that a majority vote cast on each proposition shall separately determine the issue for the ward or for the municipality. It also provides that when a ward contains an incorporated municipality, the issue shall be separately determined for the municipality and the unincorporated remainder of the ward.
Substantial compliance with the Local Option Law is achieved where, even though separate voter lists are not maintained, ballots are separately counted from different machines utilized to separate the votes of electors residing within a municipality from those of electors residing without a municipality. McFerrin v. Police Jury of Sabine Parish, 220 So.2d 203 (La.App.3rd Cir. 1969), and authorities therein cited.
We likewise find that Appellants have failed to discharge the burden of establishing that the method of absentee voting allowed in this instance changed the outcome of the election.

APPLICABILITY OF THE POLICE JURY ORDINANCE WITHIN THE MUNICIPAL LIMITS OF DENHAM SPRINGS.
Appellants urge that the Police Jury lacks authority to adopt an ordinance effective within the limits of the City of Denham Springs, and that the ordinance adopted by the City of Denham Springs is null and void because that municipality did not hold a local option election. This position is based in part upon the following provisions in LSA-R.S. 26:595:
"When the majority of qualified electors voting in an election held under the provisions of this Chapter determine that any or all of the businesses described shall not be licensed, the governing authority calling the election may provide for the prohibition by ordinance, and may provide penalties for the violation of the ordinances. The penalties shall not, however, exceed a fine of one hundred dollars or imprisonment for not more than thirty days, or both."
Appellants also rely upon City of Pineville v. Tarver, 231 La. 446, 91 So.2d 597 (1956), and City of Shreveport v. Draiss & Co., Ill La. 511, 35 So. 727 (1904), in which cases local option ordinances were invalidated without a valid local option election having been held. We find these authorities inapposite herein.
It appears that this question has been determined adversely to Appellants' contentions by our Supreme Court in McGee v. Police Jury of Caddo Parish, 225 La. 471, 73 So.2d 424 (1954). McGee, above, held invalid an ordinance predicated upon a local option election called by the Police Jury of Caddo Parish for the unincorporated areas *1053 of Ward 4 of said Parish in which only one municipality, namely the City of Shreveport, was situated. The court noted that the local option law is a delegation of legislative power which can be exercised only pursuant to the authority therein conferred. The court found that the statute does not authorize the holding of a local option election in only the unincorporated areas of a ward. The court also observed that when an election is called on a ward wide basis, all residents of the ward are entitled to vote therein, even those residing in incorporated municipalities. Concerning the effect of such an election the court stated:
"The purpose of Paragraph 2 of Section 582 is made clearer by an examination of Section 587 of the statute which deals with the election itself. The last paragraph of this section provides that a majority vote cast for each proposition shall separately determine the issue for the ward or for the incorporated municipality, and that, when a ward contains an incorporated municipality, the issue shall be separately determined for the municipality and for the unincorporated balance of the ward. When these two provisions are considered together, they clearly indicate that the statute contemplates that, when an election is called on a ward-wide basis and the ward contains an incorporated municipality, the issue presented shall be separately determined by the electorate for the municipality and for the unincorporated balance of the ward. It certainly does not contemplate that two elections shall be held, one for the unincorporated portion of the ward and one for the municipality or incorporated portion of the ward, because this section plainly provides that the issue in a ward-wide election shall separately be determined for the municipality and for the unincorporated balance of the ward. In such a ward-wide election called by the police jury the sale of intoxicating beverages could be prohibited in the municipality if the majority of the voters so voted, and the unincorporated portion of the ward could by a majority vote permit such sale, or "vote wet", or vice versa. The purpose of this provision relied upon by relators was simply to enable the issue in a ward-wide election to be separately determined for the incorporated and the unincorporated portions of such ward."
We view the cited language as holding that a Police Jury is the only body politic which can call a ward wide local option election which must encompass an entire ward, including any incorporated municipalities located therein. We also understand McGee, above, to hold that the results of a ward wide election are binding upon the incorporated municipalities of the ward in a ward wide election called by a police jury.
In Police Jury of Avoyelles Parish v. Corporation of Mansura, 107 La. 201, 31 So. 650 (1902), the Supreme Court found that a validly held parish wide election in favor of prohibition, nullified a previous election which voted the Corporation of Mansura wet. In commenting upon the effect of a parish or ward wide election the court, in Mansura, noted the following:
"If a parish, as a whole, does not take action to establish prohibition, and a ward of the parish wishes to do so, the police jury may authorize such ward to hold an election, and if the vote be in favor of prohibition it binds the cities and towns within the limits of the ward, with the limitation that 12 months after the ward shall thus have established prohibition, a town or city within its limits may vote to authorize liquor selling in the municipality. If neither the parish as a whole, nor a ward as a whole, within which is an incorporated town, takes action to establish prohibition, such town, acting through its own officials, may hold an election, and if the vote be in favor of prohibition it holds good, in so far as the town authority extends, until the people of the town vote differently at an election, which is not to be held before 12 months, from the first election, expire."
We conclude the ordinance adopted by the Police Jury on May 22, 1975, prohibiting the sale of alcoholic beverages containing more than 3.2% alcohol by weight, in all of Ward 2, Livingston Parish, except *1054 the Town of Port Vincent, is legal and binding within the municipal limits of the City of Denham Springs. We also conclude that Ordinance 588, adopted by the City of Denham Springs, on May 27, 1975, purporting to prohibit the sale of alcoholic beverages containing more than 3.2% alcohol by weight, within the city limits, is null and void because no local option election was called by the City of Denham Springs as required by law.
It is ordered, adjudged and decreed that the ordinance adopted by the Police Jury of Livingston Parish, on May 22, 1975, prohibiting the sale of alcoholic beverages containing more than 3.2% alcohol by weight, in all of Ward 2, Livingston Parish, except the Town of Port Vincent, is legally enforceable and binding within the limits of the City of Denham Springs.
It is further ordered, adjudged and decreed that Ordinance 588, adopted by the City of Denham Springs on May 27, 1975, prohibiting the sale of alcoholic beverages containing more than 3.2% alcohol by weight, within the municipality of Denham Springs, is null and void and that the judgment of the trial court is reversed and set aside insofar as it purports to hold to the contrary; all costs of these proceedings to be paid by Appellants.
Affirmed in part, reversed in part and rendered.