359 So.2d 239 (1978)
Willie H. BOYKIN, Jr., Norman Washington, Clarice Lipkins and Earl Lewing, Plaintiffs-Appellants,
v.
DeSOTO PARISH POLICE JURY, James Lynn Davis (District Attorney for 11th Judicial District) and Roy D. Webb (Sheriff for DeSoto Parish), Defendants-Appellees.
No. 13538.
Court of Appeal of Louisiana, Second Circuit.
May 1, 1978.
Writ Refused June 16, 1978.
*241 Watson, Murchison, Crews, Arthur & Corkern by William P. Crews, Jr., and Ronald E. Corkern, Jr., Natchitoches, for plaintiffs-appellants.
E. L. Edwards, Jr., Asst. Dist. Atty., Many, for defendants-appellees.
Before BOLIN, HALL and JONES, JJ.
HALL, Judge.
Plaintiffs' suit attacks the legality of a local option election and an ordinance enacted pursuant to the election prohibiting the sale of alcoholic beverages in Ward 8 of DeSoto Parish, which includes the municipality of Logansport. From a judgment rejecting their demands for an injunction and dismissing their suit, plaintiffs appeal. We affirm.
Each of plaintiffs' contentions shall be separately stated and discussed.
1. The petition requesting the local option election did not comply with LSA-R.S. 26:582 and 583 in that it did not request that the election be separately called and held with the results separately binding on the incorporated municipality and the unincorporated balance of the ward.
Tracking the language of LSA-R.S. 26:583, the petition requested that the police jury "call an election to submit, in the manner provided by law, to the qualified electors of Ward 8 of DeSoto Parish, the following four propositions . . . ." The petition was for a ward-wide election and adequately expresses that intent. The requirements of LSA-R.S. 26:582 and 587 that the election be separately called and held and the results separately tabulated for each incorporated municipality and for the unincorporated balance of the ward relates to the call of the election and conduct of the election by the police jury and there is no requirement that language to this effect be included in the petition. The petition was in proper form.
2. The petition contained names of electors who did not actually sign the petition.
Five witnesses testified their names were signed on the petition by their wives with their authorization. There were several names on the petition which were hand printed rather than written in cursive. Even if the contested signatures were disregarded, the petition still contains the signatures of more than 25 percent of the qualified electors of the ward, as required by LSA-R.S. 26:582. No requests were made by any of the electors to have their names removed from the petition prior to the election. The fact that a signature is printed by hand rather than written in cursive does not indicate a lack of genuineness. Any irregularities arising out of these facts are not substantial defects which will nullify the election or ordinance.
3. It is impossible to ascertain from the petition or the certificate of the Registrar of Voters whether the petition was signed by 25 percent of the qualified electors of either the municipality of Logansport or the unincorporated balance of the ward.
To call a ward-wide election the petition must have the signatures of 25 percent of the qualified electors of the ward. There is no requirement that there be separate petitions for the municipality and the unincorporated part of a ward or that the petition contain separately the signatures of 25 percent of the electors residing in the municipality and 25 percent of the electors residing in the unincorporated portion of the ward.
4. The verification of the Registrar of Voters was not "sworn" as required by LSA-R.S. 26:585.
The letter from the Registrar of Voters to the police jury filed with and attached to the petition contains substantially all of the *242 information required by the statute. It is signed by the Registrar of Voters and is stamped with his official seal of office. The verification was not sworn to before a Notary Public. The Registrar testified he considered the affixing of his seal as the equivalent of a sworn verification. Plaintiffs do not contest the validity or accuracy of the facts contained in the Registrar's letter but merely attack the absence of a Notary's signature. Under these circumstances there was substantial compliance with the statute. Ginn v. Village of Bonita, 62 So.2d 159 (La.App. 2d Cir. 1952).
5. The resolution adopted by the DeSoto Parish Police Jury calling the election was adopted at a special meeting rather than at a regular meeting of the jury in violation of LSA-R.S. 26:586.
The police jury's secretary explained that to comply with other statutory provisions the police jury was required to call a special meeting to adopt the resolution because the next regular police jury meeting after filing of the petition by the Registrar was less than 30 days after the filing and the following regular meeting was more than 45 days after the filing. Under these circumstances the special meeting was sufficiently regular to meet the statutory requirement. Nomey v. Jackson Parish Police Jury, 343 So.2d 315 (La.App. 2d Cir. 1977); McFerrin v. Police Jury of Sabine Parish, 220 So.2d 203 (La. App. 3d Cir. 1969).
6. The resolution calling the election did not include a separate call for an election within the municipality of Logansport.
The statute contemplates one ward-wide election with the issues separately determined for the municipality and for the unincorporated balance of the ward. McGee v. Police Jury of Caddo Parish, 225 La. 471, 73 So.2d 424 (1954); Williams v. Town of Many, 350 So.2d 224 (La.App. 3d Cir. 1977), writ refused 351 So.2d 1205 (La.1977); Niette v. Natchitoches Parish Police Jury, 348 So.2d 162 (La.App. 3d Cir. 1977), writ refused 351 So.2d 160 (1977); Hollan v. Police Jury of Webster Parish, 134 So.2d 132 (La.App. 2d Cir. 1961).
The resolution adopted by the DeSoto Parish Police Jury specifically provides that a majority of the votes cast by voters residing in that portion of the ward lying within the corporate limits of the Town of Logansport on each proposition shall separately determine that issue for and in the portion of the ward lying within the corporate limits. The election was separately called for the incorporated municipality and the unincorporated balance of the ward. The language of the resolution is virtually identical to that of the resolution approved in the McFerrin case.
7. Various people other than commissioners, including ministers of the gospel, were allowed to be at the polling places during the conduct of the election.
The presence of ministers at the polling places is not prohibited by law and the testimony at the trial does not indicate that the ministers attempted to influence any of the persons voting in the election.
8. The location of the voting places resulted in some residents of the municipality voting outside of the corporate limits and some residents of the unincorporated portion of the ward voting within the corporate limits.
There were two voting places, the City Hall (inside the corporate limits) and the American Legion Hall (outside the corporate limits). Precincts 1 and 2 of Ward 8 included both voters living within the corporate limits and voters living outside of the corporate limits. Separate voting machines were provided for the voters of the respective areas and the proces verbal of the election shows that the votes were separately tabulated. The vote was "dry" in each area. Although there was some testimony that the commissioners did not instruct the voters concerning the use of the separate voting machines, there was also evidence to the contrary and the irregularity in this respect was not proved. The same procedure was approved in the McFerrin case and in Stewart v. Livingston Parish Police Jury, 340 So.2d 1045 (La.App. 1st Cir. 1976).
*243 The trial court correctly held that the irregularities alleged were not established and that there was substantial compliance with the statute governing local option elections. The judgment of the district court is affirmed at appellants' costs.
Affirmed.