Dear Mr. Marvin:
Your questions are restated herein as per your correspondence:
 1. When you have an election district like Webster Parish Police Jury District 10, which partially overlaps with the Minden City Limits, if the election district votes to allow the sale of alcoholic beverages this fall, will the portion of Police Jury 10 that is within the Minden City Limits remain "dry" like the remainder of the city, or be allowed to sell alcoholic beverages?
 2. Will all the voters in Webster Parish Police Jury District 10 be allowed to vote in such an election, or will it be restricted to the voters in the portion of District 10 who are outside the city limits?
Your question presupposes that a majority vote of all votes cast within the election district would dictate the wet/dry status of that portion of Minden included within Election District Ten. This premise is incorrect; the votes must be tabulated separately, as required by LSA-R.S. 26:588(C):
 C. In an election a majority vote cast on each proposition shall separately determine that issue for the ward, the election district, or for the incorporated municipality and in such an election when a ward or election district contains an incorporated municipality, the issue shall be separately determined for the municipality and for the unincorporated balance of the ward or election district. (Emphasis added).
We are guided by the decisions of the courts in McFerrin vs.Police Jury of Sabine Parish, 220 So.2d 203 (La.App. 1969),Stewart vs. Livingston Parish Police Jury, 340 So.2d 1045
(La.App. 1st Cir. 1976) and Boykin vs. DeSoto Parish Police Jury,359 So.2d 239 (La.App. 2nd Cir. 1978). In McFerrin, supra, a local option election called for the entirety of Ward 5 of Sabine Parish included only a portion of the municipality of Zwolle. The election results were challenged as invalid on the basis that it was illegally held for only a portion rather than the entirety of the municipality. Responding to this objection, the court stated:
 The statute cited[1] limits calling of elections to the entirety of municipalities or the entirety of wards, and no subdivisions thereof. What was done in this case was simply the calling of a ward-wide election. The fact that only a portion of the municipality of Zwolle was included in the ward should not mean that the election would have to be called for the entirety of the municipality, as again, this was only a ward-wide, not a municipality-wide election. . . . . . A close reading of this statute, does not convince us that it was the legislative intent that when a ward includes a portion rather than the entirety of an incorporated municipality, that the election has to be called for the entirety of the ward as well as the entirety of the incorporated municipality, not fully within the ward. McFerrin, supra, page 205.
While separate elections for the municipality and the ward were not required to be called in McFerrin, the court did indicate that the votes cast by those electors residing within the corporate limits of Zwolle were to be tabulated separate and apart from those votes cast in the unincorporated sections of the ward.
We conclude from the McFerrin case that procedures reflecting substantial compliance with those statutes requiring separation of the election results for an incorporated municipality and the unincorporated balance of the election district must be utilized. It may be necessary to have separate commissioners, separate voting lists, and separate tabulations, to err on the side of caution; however, in McFerrin, supra, separate commissioners and separate voting lists were not provided; nonetheless, the fact that the commissioners directed the electors to vote on machines separately designated for the municipality and the unincorporated balance of the ward were procedures deemed to be in sufficient compliance with the statutory directive to separate the votes.
The facts as indicated in your letter reflect that the City of Minden is currently "dry". Election District 10 includes a portion of the City of Minden. The Webster Parish Police Jury proposes to call a district-wide local option election, and you want to know how to assess the votes cast in that proposed election.
From the cases cited above, we distill the following guidelines which are applicable herein. The statutes contemplate that a local option election be called for the entirety of the election district or the municipality, as the case may be. When an election is called within an election district, the election must be held in the entirety of the election district and not in only the unincorporated areas. When an election district contains a portion of (or the entirety of) an incorporated municipality, the wet/dry issue is determined by tabulating those votes cast within a portion or the entirety of the municipality separately from those votes cast in the unincorporated remainder of the election district.
First, to call a district-wide election, the petition must have the signatures of twenty-five percent of the qualified electors of Election District 10. There is no requirement that there be separate petitions for the municipality and the unincorporated part of the election district or that the petition contain separately the signatures of twenty-five percent of the electors residing in the municipality and twenty-five percent of the electors residing in the unincorporated portion of the election district. See Boykin, supra, page 241.
Note further that all residents of Election District 10 are entitled to vote in the election, including those residing in the portion of the incorporated municipality of Minden which falls within Election District 10. See McGee vs. Police Jury of CaddoParish, 73 So.2d 424 (La. 1954), at page 426. In specific response to your second question, note here that all qualified electors of the election district are verified by the registrar of voters pursuant to LSA-R.S. 26:586. A "qualified elector" is an actual bona fide resident of this state and the parish, municipality, and precinct in which he offers to register to vote. LSA-R.S. 18:101(A) and (B) set forth the qualifications to vote and further define resident to mean "a citizen who resides in this state and in the parish, municipality (if any), and precinct in which he offers to register and vote" who has an intention to reside there indefinitely.
The day of the election votes should be cast on different machines, i.e., machines designated for the electors of Election District 10 who reside within the incorporated portion of Minden falling in District 10. Separate machines should be designated to receive votes cast by the electors residing within the unincorporated portion of District 10.
The votes should then be separately tabulated. A majority vote of the electors residing within the corporate limits of Minden falling within District 10 in favor of "wet" or "dry" status will thus separately determine the issue for that portion of Minden included in District 10. A majority of votes in favor of "wet" status cast on those machines by electors residing in the unincorporated portion of District 10 will make the unincorporated portion of Election District 10 "wet". It is entirely possible that Minden could continue in a "dry" status, even if the remainder of the unincorporated portion of Election District 10 votes "wet".
Should the residents of Minden be so inclined, they can call a "city-wide" local option election. The municipality and the election district are separate subdivisions for purposes of LSA-R.S. 26:582(C) permitting an election only once every two years within the same subdivision. While Election District 10 could not reconsider wet/dry status for another two years, the call could still be issued "city-wide" and the wet/dry status could be newly determined within the entirety of the municipal limits of Minden.
Your questions do not invoke application of LSA-R.S. 26:583
because no "merger" appears to have taken place. Merger is contemplated when there is a redrawing of district lines, or annexation, or some such territorial change not indicated in the facts presented. With regard to this statute, please see attached Attorney General Opinion 97-438, in which this author readily admitted the confusion surrounding the correct interpretation of LSA-R.S. 26:583, and further suggested that a suit for declatory judgment might be warranted.
Finally, we direct your attention to LSA-R.S. 26:592(C), providing:
 C. The date fixed for the election shall be the next date on which such an election may be held, as provided for in R.S. 18:402(F), which falls more than forty-five days after the date verification was filed with the governing authority by the registrar of voters.
The reference to the provisions of the election code in R.S.26:592(C) will help you determine when the local option election may legally be held.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________________ KERRY L. KILPATRICK Assistant Attorney General
KLK:ams
Date Received:
Date Released: November 23, 1998
KERRY L. KILPATRICK
ASSISTANT ATTORNEY GENERAL
[1] LSA-R.S. 26:582 at the time of McFerrin pertinently provided:
 A. Upon petition of not less than twenty-five percent of the qualified electors residing in any ward or any incorporated municipality the governing authority shall order a referendum election to be held to determine whether or not the business of selling alcoholic beverages shall be conducted and licensed therein.
 B. In the case of such an election held on a ward or municipal basis the election shall be separately called and held, and the result separately binding for each incorporated municipality, and for the unincorporated balance of the ward.
 C. No such election shall be held for the same subdivision more often than once in every two years.
LSA-R.S. 26:582 currently provides, in pertinent part:
 A. (1) Upon petition of not less than twenty-five percent of the qualified electors residing in any ward, election district, or any incorporated municipality, the governing authority shall order a referendum election to be held to determine whether or not the business of selling alcoholic beverages shall be conducted and licensed therein.
 (2) A copy of the petition shall be submitted to the registrar on the date the first signature is affixed on the petition for the purpose of determining the total number of qualified voters residing in each ward, election district, or each incorporated municipality in which such petition will be circulated.
 B. In the case of such an election held on a ward, election district, or municipal basis the election shall be separately called and held, and the result separately binding for each incorporated municipality, and for the unincorporated balance of the ward or election district.
 C. No such election shall be held for the same subdivision more often than once in every two years.